**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TRACY RESETAR, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 16-3428 |
| | : | |
| PHILLIPS FEED SERVICE, INC., | : | |
| | : | |
| Defendant. | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                                              **March 22, 2017**

In this employment discrimination case, the plaintiff alleges she was sexually harassed by her boss's wife, who was also an employee at the same company. The defendant filed a motion to dismiss. I will deny the motion.

**I.     BACKGROUND**

The plaintiff, Tracy Resetar, was employed as an Executive Administrator at Phillips Feed Service, Inc. in Easton, Pennsylvania. (Doc. No. 7 ¶ 12). She worked at Phillips Feed for thirteen years up until the date she was fired. (Id. ¶ 11) As an Executive Administrator, Ms. Resetar reported directly to Phillips Feed's CEO: Mr. Blaine Phillips. (Id. ¶ 12). Mr. Phillips's wife worked as the company's Chief Marketing Officer ("CMO"). (Id. ¶ 15).[1]

---

[1] The amended complaint does not identify the CMO by her name. Therefore, she is referred to as "the CMO" throughout this opinion.

1

In November 2012, after Ms. Resetar underwent breast augmentation surgery, the CMO began sexually harassing her. (Id. ¶¶ 13, 20). The CMO made Ms. Resetar follow a "strict" dress code, but the CMO was allowed to wear clothes that did not comply with this dress code and that were "exceptionally revealing." (Id. ¶ 15). The CMO would repeatedly boast that she was "probably in violation of the dress code, but who's going to say anything to me about it?" (Id. ¶ 18). The CMO would send home other women, to change their outfits, if they were not in compliance with the dress code. (Id. ¶ 17).

According to Ms. Resetar, defendant's CMO would continually tell Ms. Resetar that she (the CMO) had "all the power." (Id. ¶ 19). The CMO would stare at Ms. Resetar's breasts and body, something she did not do to male employees. (Id. ¶ 23). This made Ms. Resetar afraid the CMO sexually desired her or was jealous of her. (Id. ¶ 24). It also made Ms. Resetar fear the CMO was going to touch her breasts. (Id.). The CMO would also tell Ms. Resetar: "I have the perfect size boobs for my body." (Id. ¶ 22). Based on the CMO's comments and behavior, male employees at Phillips Feed told Ms. Resetar that they thought the CMO was going to touch Ms. Resetar's breasts. (Id. ¶ 26). On one occasion, the CMO made Ms. Resetar pick up luggage from hers and Mr. Phillips's home, knowing that the luggage was directly next to "a basket filled with the [CMO]'s lingerie." (Id. ¶ 30).

Ms. Resetar also alleges the CMO would make comments about her husband, Mr. Phillips. For example, the CMO made degrading remarks about Mr. Phillips's children. (Id. ¶¶ 27–28). The CMO also commented that her husband, Mr. Phillips, had "chicken arms." (Id. ¶ 29).

The CMO had no direct line of supervision over Ms. Resetar. (Id. ¶ 32). However, the CMO was still successful in taking away some of Ms. Resetar's job duties in an effort to force Ms. Resetar to resign. (Id.). Ms. Resetar contends that the CMO was fixated on Ms. Resetar's physical looks, which made Ms. Resetar extremely uncomfortable. (Id. ¶¶ 33–34).

Ms. Resetar never complained about the CMO's conduct. (Id. ¶ 35). Ms. Resetar never complained because she had been told by the CMO that she (the CMO) had "all the power," implying that if Ms. Resetar complained then she would be fired. (Id.). On September 24, 2014, defendant fired Ms. Resetar. (Id. ¶ 36). Defendant refused to provide Ms. Resetar, despite her requests, with any explanation of why she was being fired. (Id. ¶ 37). The CMO was directly involved in the decision to terminate Ms. Resetar. (Id. ¶ 38).

In December 2014, Ms. Resetar filed an administrative Charge of Discrimination against defendant Phillips Feed. (Id. ¶¶ 8–9). This Charge was jointly filed with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC"). (Id.). After receiving a right to sue letter from the EEOC, Ms. Resetar commenced this action against Phillips Feed, alleging sexual harassment and discrimination claims under Title VII of the Civil Rights Act (Title VII) and the Pennsylvania Human Relations Act (PHRA).

## II.   LEGAL STANDARD

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6);

see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Subsequently, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the

4

speculative level.'" (quoting Twombly, 550 U.S. at 555)).

The basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

Ms. Resetar brings two claims under Title VII: (1) same-sex sexual harassment; and (2) gender discrimination.[2]

### A.   *Same-Sex Sexual Harassment Claim*

Ms. Resetar claims defendant is liable for same-sex sexual harassment in violation of Title VII.[3]

---

[2] Ms. Resetar brings a separate claim under the PHRA for sexual harassment and discrimination. This claim is based upon the same conduct that supports her Title VII claims.

[3] Ms. Resetar's sexual harassment claim is one for hostile work environment. A hostile work environment claims is a type of sexual harassment claim that can be brought under Title VII. Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999).

To make out a *prima facie* case for hostile work environment, the plaintiff must ultimately prove: (1) she suffered intentional discrimination because of her sex, (2) the discrimination was pervasive or severe, (3) the discrimination detrimentally affected her, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) *respondeat superior* liability existed. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013). Defendant's motion to dismiss challenges Ms. Resetar's claim at the first and second *prima facie* elements.

### 1.   **Because of Sex**

Defendant argues plaintiff's hostile work environment claim fails because she cannot establish that the harassment she endured was "because of her sex." Id. I disagree.

Because Ms. Resetar's alleged harasser—the defendant's CMO—is female, her claim is governed by the standards for same-sex harassment claims set forth in Bibby v. Philadelphia Coca Cola Bottling Co., 260 F.3d 257 (3d Cir. 2001). In Bibby, the U.S. Court of Appeals for the Third Circuit held that "there are at least three ways by which a plaintiff alleging same-sex sexual harassment might" satisfy the first prong of a hostile work environment claim—that the harassment was "because of sex." 260 F.3d at 264. These three avenues are: (1) the alleged harasser sexually desired the victim, (2) the harasser expressed general hostility toward the presence of one sex in the workplace, or (3) the harasser was acting to punish the victim's failure to comply with gender stereotypes. Bibby, 260 F.3d at 264.[4]

---

[4] Aside from these three methods of proof, the Third Circuit made clear that "[b]ased on the facts of a particular case and the creativity of the parties, other ways in which to prove that

Here, the amended complaint states sufficient facts to satisfy the first prong of a same-sex harassment claim. It avers that the alleged harasser, also the wife of defendant's CEO, stared at Ms. Resetar's breasts on a daily basis for years. It also states the CMO selectively enforced a strict dress code for women, but not men. According to the amended complaint, the CMO would not adhere to this dress code, but would send other women home who failed to comply with it. As the CEO's wife, the CMO would tell Ms. Resetar that she had "all the power," and that she had perfectly sized breasts for her body. These comments were made soon after Ms. Resetar underwent breast augmentation surgery. The amended complaint further states that Ms. Resetar was fired and that the CMO was directly involved in the decision to fire her. Before being fired, the CMO took away several job duties from Ms. Resetar.

The CMO's selective enforcement of a female-only dress policy shows a general hostility toward women in the workplace. Bibby, 260 F.3d at 264. More specifically, it shows hostility toward Ms. Resetar specifically because Ms. Resetar is a woman. The CMO's daily staring at Ms. Resetar's breasts could also show that the CMO sexually desired Ms. Resetar, which is sufficient proof of the first prong under Bibby. Id.

Ms. Resetar worked directly for the CMO's husband. This further supports Ms. Resetar's claim that the CMO was hostile toward her. It is clear from the amended complaint that the CMO would not have treated Ms. Resetar like she did if Ms. Resetar

---

harassment occurred because of sex may be available." Bibby, 260 F.3d at 264 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80–81 (1998)).

7

were a man. Notably, the CMO displayed none of the above hostility toward men. All of this conduct satisfies the first prong of a same-sex harassment claim under Bibby.

### 2. **Severe or Pervasive**

Defendant also argues Ms. Resetar's harassment claim must be dismissed because the alleged conduct was not "severe or pervasive" enough to create a hostile work environment. I disagree.

In order to make out the second element of a *prima facie* hostile work environment claim, the plaintiff must establish that the discriminatory conduct was "severe or pervasive." Mandel, 706 F.3d at 168. Courts look to the totality of the circumstances in deciding whether alleged discriminatory conduct is severe or pervasive. Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). In doing so, courts consider the discriminatory conduct's: (i) frequency; (ii) severity; (iii) whether it is physically threatening or humiliating, or a mere offensive utterance; and (iv) whether it unreasonably interferes with the plaintiff's performance at work. Id.; see also Caver v. City of Trenton, 420 F.3d 243, 262–63 (3d Cir. 2005) ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario."). Title VII does not create a "general civility code," Oncale, 523 U.S. at 80, and as such, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment," Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). The work environment complained of must be "objectively" hostile, meaning it is "an environment that a reasonable person would find hostile or abusive." Harris, 510 U.S. at 21.

8

The conduct alleged in the amended complaint is sufficiently severe or pervasive. As for the "frequency" of the conduct, Mandel, 706 F.3d at 168, Ms. Resetar claims the CMO harassed her every single day from November 2012 through September 2014 (nearly two years). Such frequency is probative of severity and pervasiveness. E.g., Mertig v. Milliken & Michaels of Del., Inc., 923 F. Supp. 636, 646 (D. Del. 1996) (finding vulgar comments made "very often" or "daily," over a one-year period, sufficiently severe or pervasive to survive a motion for summary judgment). Several male employees were so concerned about the harassment that they told Ms. Resetar they thought the CMO was going to physically grab her. This buttresses Ms. Resetar's claim that the conduct was "objectively" abusive, Harris, 510 U.S. at 21, because people other than Ms. Resetar herself recognized the CMO's conduct as abusive.

The CMO's repeated statement to Ms. Resetar—that she had "all the power"—could obviously be viewed as threatening. The CMO's harassment interfered with Ms. Resetar's work performance in that the CMO deprived her of several job duties, allegedly in an attempt to force Ms. Resetar to resign. Taking all these allegations as true, and viewing them together, I find that the amended complaint sets forth sufficiently severe or pervasive conduct.

Defendant urges me to dismiss this claim pursuant to Rule 12(b)(6) for failure to state a claim. In support of this argument, defendant cites to a string of eight district court cases. However, seven out of these eight cases addressed motions for summary judgment—not motions to dismiss. (Doc. No. 8-1 at 4–5). A determination that there is

no genuine dispute of fact as to the severity or pervasiveness of conduct is different than merely deciding whether discriminatory conduct plausibly states a claim for relief.

Contrary to defendant's argument, Betz v. Temple Health Systems, Civ. A. No. 15–cv–727, 2015 WL 4713661 (E.D. Pa. Aug. 7, 2015) does not help its cause. In Betz, the district court granted a defendant's motion to dismiss a female plaintiff's hostile work environment claim. 2015 WL 4713661, at *4. There, the plaintiff alleged that her female co-workers were engaging in "sexually explicit behavior that she found offensive and refused to participate in." Betz, 2015 WL 4713661, at *4.[5] Unlike the sexual conduct in Betz, which was not personally directed at the plaintiff, here Ms. Resetar alleges the CMO specifically targeted her. For instance, the CMO would stare at Ms. Resetar's breasts and make sexually offensive and threatening comments to Ms. Resetar. The CMO was also directly involved in firing Ms. Resetar and, before doing so, she altered Ms. Resetar's job duties. I am satisfied, at this stage of the litigation, that these facts, viewed as true, rise to the level of severe or pervasive conduct.

For all the foregoing reasons, I will deny defendant's motion to dismiss Ms. Resetar's same-sex harassment claim.

### B.   *Gender Discrimination Claim*

Ms. Resetar claims defendant is also liable for gender discrimination in violation of Title VII.

---

[5] Betz's female co-workers would pretend to grope each other and kiss each other. Betz, 2015 WL 4713661, at *1. They would also make sexually explicit and lewd jokes amongst each other. Id.

To make out a *prima facie* case for gender discrimination under Title VII, Ms. Resetar must show that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) members of the opposite sex were treated more favorably. Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013) (citing Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)). This fourth element does not require the plaintiff to prove that she was "replaced by someone outside the protected class." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 n.7 (3d Cir. 2003). The ultimate focus, in assessing a *prima facie* gender discrimination case, is whether the plaintiff was being treated "less favorably than other because of [her] . . . sex." Id. at 798 (quoting Pivirotto v. Innovative Sys., Inc., 191 F.3d 244, 352 (3d Cir. 1999)).

Defendant argues Ms. Resetar's gender discrimination claim should be dismissed because the amended complaint does not allege she was replaced by a male employee or that she was treated less favorably because of her sex.

Contrary to defendant's position, the amended complaint contains sufficient factual information to plausibly demonstrate that Ms. Resetar was treated less favorably because she is a woman. Simply put, the amended complaint shows that—if Ms. Resetar were a man—she would not have been terminated. As a woman, Ms. Resetar was subject to a strict dress code policy that did not apply to male employees. The amended complaint also supports an inference that Ms. Resetar was terminated because she is a woman, in that, the CMO was jealous of Ms. Resetar's proximity to her husband. Cf. Lococo v. Barger, 958 F. Supp. 290, 296–97 (E.D. Ky. 1997) (denying summary

judgment on female plaintiff's gender discrimination claim—that she was fired because her male supervisor's wife was jealous of her—because the issue of whether the termination was based on "gender" or "personal reasons" was a genuine dispute of material fact), aff'd, 234 F.3d 1268 (Table), 2000 WL 1679484 (6th Cir. 2000).[6] Taking the allegations in the amended complaint as true, it is clear that the CMO's hostility toward Ms. Resetar was gender-based and was necessarily related to the fact that Ms. Resetar is a woman. This supports an inference that Ms. Resetar was terminated because of her sex. This conclusion is further bolstered by the amended complaint's allegation that defendant did not fire male employees based on their physical appearance.

For all these reasons, I will deny defendant's motion to dismiss Ms. Resetar's gender discrimination claim.

## IV. CONCLUSION

The amended complaint sets forth plausible claims for same-sex sexual harassment and gender discrimination in violation of Title VII. Accordingly, I will deny the defendant's motion to dismiss in its entirety.[7]

An appropriate Order follows.

---

[6] The U.S. Court of Appeals for the Sixth Circuit reversed the district court, in Lococo, regarding other claims. However, it affirmed the district court's denial of summary judgment on the plaintiff's gender discrimination claim. Lococo is particularly instructive here because it also involved a gender discrimination claim that was based upon the jealousy of a supervisor's spouse.

[7] The substantive analysis of claims under Title VII and the PHRA is identical. Huston v. Proctor & Gamble Paper Prods. Corp., 568 F.3d 100, 104 n.2 (3d Cir. 2009). Therefore, I will also deny defendant's motion to dismiss the PHRA claim at Count III of the amended complaint.